W. FLETCHER, Circuit Judge,
dissenting:
Stuart and Barbara Hutchison entered into a one-year contract with AT & T. AT & T promised to provide telephone and high speed internet services for the contract term. In return, the Hutchisons promised to pay a monthly fee of approximately $40 for each of the 12 months of the term. The contract provided, further, “If you [the Hutchisons] ... cancel the services prior to the expiration of that *335 term, you agree to pay an additional early Termination Fee [of] $200.”
Two weeks before the end of their one-year contract, the Hutchisons called AT & T to say that they were moving out of their residence and that they therefore did not need service for the last two weeks of the contract. At oral argument, AT & T’s counsel forthrightly stated that when the Hutchisons made that call they had already paid the last monthly fee owed under the contract.
When the Hutchison called AT & T, they were doing both the incoming residents and AT & T a favor. The new residents would not be able to get service until the Hutchisons’ service was formally terminated. By letting AT & T know that they did not need the service, the Hutchi-son gave the new residents the opportunity to get service as soon as they moved in. And they gave AT & T the opportunity to sell the service to the new residents two weeks early, even during the time AT & T still owed service to them.
AT & T counsel conceded at oral argument that if the Hutchisons had not called AT & T, but had merely allowed their service to continue for the last two weeks, AT & T would not have charged them the “early termination fee.” However, because the Hutchisons notified AT & T that they did not need the last two weeks of service, AT & T billed the Hutchisons for the early termination fee, despite having already received every monthly payment due under the contract. For their good deed of allowing AT & T to terminate their service two weeks early, the Hutchisons were charged $200.
The question is whether the $200 fee is enforceable because it is an “alternative performance” provision or unenforceable because it is a liquidated damages provision. Under California law, a liquidated damages provision in a consumer contract like this one would be invalid because the amount of actual damages resulting from breach would never be “impracticable or extremely difficult to fix.” Cal. Civ.Code § 1671(d). AT & T contends that the fee functions as an alternative means of performance. The panel majority agrees with AT & T. The Hutchisons contend it functions as an invalid liquidated damages provision. I agree with the Hutchisons.
California law tells us to look to function rather than form in analyzing a contract. Blank v. Borden, 11 Cal.3d 963, 970, 115 Cal.Rptr. 31, 524 P.2d 127 (1974). On the facts of this case, the $200 fee did not function as an alternative means of performance. The Hutchisons had a contractual obligation to pay AT & T $40 per month for twelve months. They fully performed that obligation. AT & T had a contractual obligation to provide twelve months of service to the Hutchisons. Even though the Hutchisons had paid in full and were contractually entitled to two more weeks of service, they excused AT & T from performing that obligation. An “alternative means of performance” is just that — an alternative means of performing under a contract. In this case, the alternative means in which the Hutchisons could have performed were either (a) to pay the twelve monthly fees or (b) to pay $200. Because the Hutchisons had already performed their obligation to pay the twelve monthly fees, there is no way that they owed an additional $200 as an “alternative means of performance.”
During the early months of the Hutchi-sons’s contract, the $200 fee would have functioned as an alternative means of performance. For example, if the Hutchisons had terminated the contract after three months, they would have owed $360 in monthly payments ($40 dollars for each of the remaining nine months), or, alternatively, they would have owed the $200 *336 early termination fee. But during the last few months of the contract the $200 fee functioned as a liquidated damages elause.
Whether a clause has the potential to function as an alternative means of performance or as liquidated damages is determined at the time the parties enter into the contract. Id. at 972 n. 7, 115 Cal.Rptr. 31, 524 P.2d 127. A clause specifying a lump-sum payment in the event of nonperformance of an obligation functions as an alternative means of performance if the elause provides a rational choice to the obligated party. Id. at 971, 115 Cal.Rptr. 31, 524 P.2d 127. But if the clause does not provide a rational choice, the clause functions as a liquidated damages clause. In a consumer contract where actual damages are easily calculable, the liquidated damages clause is invalid.
AT & T principally relies on Morris v. Redwood Empire Bancorp, 128 Cal.App.4th 1305, 27 Cal.Rptr.3d 797 (2005), contending that its holding is “controlling.” The court in Morris upheld a $150 “termination” (not “early termination”) fee. Unlike the contract in our case, which was for a fixed term, the contract in Moms was for an indefinite term. The court wrote, “The agreement continued indefinitely until terminated.... [Termination by Morris required payment of ... a $150 termination fee.” Id. at 1311, 27 Cal.Rptr.3d 797. Because there was no fixed term, the remaining amount in monthly fees owed by Morris at termination was by definition indefinite (and necessarily more than $150). Because the $150 termination fee was less than the amount in monthly fees remaining on the contract, the fee functioned as an alternative means of performance. By contrast, in the case now before us there was a precise end-date to the contract. There was an “early termination fee,” not merely a “termination fee.” Because we know the amount of the monthly fee, we know that the $200 fee will exceed the amount remaining to be paid when only a few months remain of the contract period. It is a rational choice — and therefore an alternative means of performance — to pay a termination fee to end a contractual obligation to pay monthly fees indefinitely. It is not, however, a rational choice to pay $200 when one owes less than that in remaining monthly fees.
AT & T also relies, though less heavily, on Blank v. Borden, 11 Cal.3d 963, 115 Cal.Rptr. 31, 524 P.2d 127 (1974). In Blank, the owner of a house entered into a seven-month exclusive contract with a realtor. The contract provided that if the realtor succeeded in selling the house within that period, he was entitled to 6% of the selling price as a commission. The contract further provided that if the owner withdrew the house from sale during the seven-month period, he would owe the realtor 6% of the price at which the house was expected to sell. The owner withdrew the house from sale during the seventh-month period and then objected that the 6% expected-price clause was an unenforceable penalty.
The Supreme Court upheld the clause. It wrote:
[T]he clause in question presents the owner with a true option or alternative: if, during the term of an exclusive-right-to-sell contract, the owner changes his mind and decides that he does not wish to sell the subject property after all, he retains the power to terminate the agent’s otherwise exclusive right through the payment of a sum certain set forth in the contract.... [W]hat distinguishes the instant case from other situations in which a form of alternative performance is used to mask what is in reality a penalty or forfeiture is the element of rational choice.
*337 Id. at 971, 115 Cal.Rptr. 31, 524 P.2d 127 (emphasis added). In support of its rationale, the Court quoted McCormick’s treatise on Damages:
‘[W]hile an alternative promise to pay money when it presents a conceivable choice is valid, yet, if a contract is made by which a party engages himself either to do a certain act or to pay some amount which at the time of the contract no one would have considered an eligible alternative, the alternative promise to pay is unenforceable as a penalty.’ (McCormick, Damages, supra, § 154, pp. 617-618).
Id. at 971 n. 7, 115 Cal.Rptr. 31, 524 P.2d 127 (emphasis added).
The Supreme Court’s decision in Blank shows what is wrong with the $200 early termination fee in this case. The Court in Blank upheld the 6% expected-price clause because it preserved a rational choice for the owner. If during the life of the contract the owner decided he did not want to sell the house after all, and if the owner was willing to pay 6% of the expected price in order to withdraw the house from the market, that was the owner’s “rational choice.” This could be a rational choice even if only two weeks remained on the contract. That is, if the owner was willing to pay 6% of the expected price to avoid the risk that a buyer would accept the outstanding offer during the last two weeks, it was rational for the owner to withdraw the house from the market and to pay the 6%.
In this case, the Hutchisons owed twelve monthly fees of $40 during the one-year life of the contract. When the parties entered into the contract, it was clear that if the contract were terminated with five months or more remaining on the contract, the $200 fee would function as an alternative means of performance. It is equally clear that if the contract were terminated with four months or fewer remaining, the $200 fee would function as an invalid liquidated damages clause. If four months remained on the contract, the Hutchisons would owe only $160 in monthly payments, but would be charged $200. It would not be a “rational choice” to pay a $200 early termination fee when less than $200 in monthly payments was left on the contract. In McCormick’s words, “no one would have considered [it] an eligible alternative” to pay $200 when less than $200 in monthly payments remained to be paid. The irrationality of such an alternative was fully apparent at the time the parties entered into the contract.
In sum, I conclude that the $200 early termination fee in this case is not an alternative means of performance but rather, as it functions, as an invalid liquidated damages provision under California’s Civil Code § 1671(d). The $200 fee cannot function as an alternative means of performance because the Hutchisons have already fully performed their obligation to pay for twelve months of service. More generally, the $200 early termination fee functions as an invalid liquidated damages clause rather than an alternative means of performance when the amount of monthly fees remaining on the contract is less than $200. In this case, there were no remaining monthly payments owed. To state the obvious, 0 is less than 200.
I fundamentally disagree with the majority’s conclusion that the Hutchisons can be required to pay $200 in addition to the twelve monthly payments they have already made under this twelve-month contract. I respectfully dissent.